UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PARASTOO RASHIDIAN, *et al.*,

    *Plaintiffs*,

v.

MERRICK GARLAND, *et al.*,

    *Defendants*.

Civil Action No. 1:23-1187 (ACR)

### MEMORANDUM OPINION AND ORDER

Plaintiffs Negin Khosravaninezhad and Soroodeh Khalili are Iranian citizens who, in 2022, applied for nonimmigrant visas to travel to the United States.[1] To date, officials at the U.S. Consulate in Dubai have not issued final decisions on their applications. Like many other visa applicants in recent years, Plaintiffs have sued an array of federal officials, including Secretary of State Anthony Blinken and various consular officers, seeking an order requiring prompt adjudication of their applications. Although the Court sympathizes with Plaintiffs' situation, their Complaint does not state any plausible claims. The Court therefore dismisses this case without prejudice.

                                      **I.    BACKGROUND**

    **A.    Legal Background**

Foreign students "seek[ing] to enter the United States temporarily and solely for the purpose of pursuing" "full course[s] of study" at U.S. educational institutions may apply for F-1

---

[1] This case originally involved six plaintiffs. *See* Dkt. 1 ¶¶ 6-11. Since the Complaint's filing, the other four plaintiffs have voluntarily dismissed their claims. Dkts. 9, 12. The Court therefore addresses only Khosravaninezhad's and Khalili's claims.

nonimmigrant visas. 8 U.S.C. § 1101(a)(15)(F)(i). Their spouses and minor children may apply for F-2 visas to join them in the United States. *Id.* § 1101(a)(15)(F)(ii). Subject to exceptions not applicable here, each F-visa applicant must undergo an in-person interview with a consular officer. *Id.* § 1202(h).

Upon receiving a completed application, a consular officer "must" either "issue the visa" or "refuse the visa."[2] 22 C.F.R. § 41.121(a). If the consular officer determines that he needs additional information to determine the applicant's eligibility, he may, "in accordance with [State] Department procedures," refuse the visa pending "further administrative processing." *Administrative Processing Information*, U.S. Dep't of State, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html [https://perma.cc/5KN2-6X7U].

Plaintiffs face an additional hurdle because of their Iranian citizenship. Under 8 U.S.C. § 1735, "[n]o nonimmigrant visa," including an F visa, "shall be issued to any alien from a country that is a state sponsor of international terrorism"—a designation that Iran has held since 1984—"unless the Secretary of State determines, in consultation with the Attorney General and the heads of other appropriate . . . agencies, that such alien does not pose a threat to the safety or national security of the United States." 8 U.S.C. § 1735(a); *see State Sponsors of Terrorism*, U.S. Dep't of State, https://www.state.gov/state-sponsors-of-terrorism [https://perma.cc/94QQ-E6RB].

---

[2] The consular officer must instead "discontinue granting the visa" if the applicant's country is subject to visa sanctions under 8 U.S.C. § 1253(d). 22 C.F.R. § 41.121(a). No party argues that such sanctions apply here. *See* Dkt. 5 at 18-19 (discussing 22 C.F.R. § 41.121(a)).

B.     **Factual and Procedural Background**

The Court takes the facts from Plaintiffs' Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

Plaintiffs are both Iranian citizens who applied for F visas through the U.S. Consulate in Dubai. Dkt. 1 (Compl.) ¶¶ 31, 33-34, 70. Plaintiff Khosravaninezhad applied for an F-1 visa in June 2022 to enroll in an astrophysics Ph.D. program at the University of California, Riverside. *Id.* ¶¶ 32-33. She appeared for an interview with a consular officer on June 6, 2022. *Id.* ¶ 34. "[A]t the conclusion of her interview[,] she was given a []refusal notice for further administrative processing." *Id.* "On the same day, the [C]onsulate emailed [her] . . . a supplemental visa questionnaire," which she returned nine days later. *Id.* ¶ 35. Khosravaninezhad has not yet received a final decision on her application and has "repeatedly" been told "that her case is still pending . . . administrative processing." *Id.* ¶¶ 36-37. She has "had to defer her [Ph.D. program] start date" at least twice as a result, and she "risks losing her hard-earned admission," as well as the accompanying tuition waiver and living stipend, if she cannot secure a visa. *Id.* ¶¶ 40-41.

Plaintiff Khalili applied for an F-2 visa in September 2022 to join her husband, who has an F-1 visa, in the United States. *Id.* ¶ 72. She appeared for a consular interview on September 26, 2022. *Id.* ¶ 73. Like Khosravaninezhad, she received "a []refusal notice for further administrative processing" at "the conclusion of the interview," *id.* ¶ 73, followed "[l]ater that day" by "a supplemental visa questionnaire," which she returned the next day, *id.* ¶ 74. Consular officials have not yet issued a final decision on Khalili's application and have responded to multiple inquiries by her husband with "pro forma responses stating that her case is pending further administrative processing." *Id.* ¶¶ 75-76. In the meantime, "Khalili has been indefinitely

separated from her husband," causing her "extreme emotional distress," *id.* ¶ 77, and requiring her to spend money "support[ing] two households," *id.* ¶ 78.

Plaintiffs, together with four other Iranian F-visa applicants, sued Defendants Secretary Blinken, Attorney General Merrick Garland, Secretary of Homeland Security Alejandro Mayorkas, Assistant Secretary of State for Consular Affairs Rena Bitter, the Consul General of the U.S. Consulate in Dubai, and ten unnamed consular officers at the U.S. Consulate in Dubai. *Id.* ¶¶ 6-17.  The Complaint asserts that Defendants have unreasonably delayed adjudication of Plaintiffs' visa applications.  *Id.* ¶¶ 92-113.  Citing both the Administrative Procedure Act (APA), 5 U.S.C. §§ 555(b), 706, and the Mandamus Act, 28 U.S.C. § 1361, Plaintiffs seek an order compelling Defendants to render final decisions within fourteen days.  Compl. at 28.  They also hint at a claim that Defendants "have engaged in a pattern and practice of unreasonable delay for Iranian visa applicants," purportedly in violation of the APA, *id.* ¶¶ 83, 105-07—though, as discussed below, Plaintiffs appear to have abandoned this theory, *see infra* Section III.C.2.

The other four plaintiffs have since received decisions on their visa applications and voluntarily dismissed their claims.  Dkts. 9, 12.  Defendants moved to dismiss the Complaint on June 27, 2023.  Dkt. 5 (Mot.).

## II.   LEGAL STANDARD

Defendants' Motion seeks dismissal both under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim.

When a defendant moves to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction.  *E.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  Where, as here, "the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations," *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000),

4

the Court "assume[s] the truth of all material factual allegations in the complaint and construe[s] the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged," *Am. Nat'l Ins. Co.*, 642 F.3d at 1139 (cleaned up).

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). To meet that standard, a plaintiff's allegations must support a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up).

### III.    ANALYSIS

Defendants raise a host of arguments for dismissal, many of which have already been addressed repeatedly by courts in this District. *See, e.g.*, *Fakhimi v. Dep't of State*, No. 23-cv-1127, 2023 WL 6976073 (D.D.C. Oct. 23, 2023) (dismissing suit by Iranian nationals seeking to compel adjudication of F-visa applications); *Rashidi v. U.S. Dep't of State*, No. 23-cv-1569, 2023 WL 6460030 (D.D.C. Oct. 4, 2023) (same); *Khazaei v. Blinken*, No. 23-cv-1419, 2023 WL 6065095 (D.D.C. Sept. 18, 2023) (same). Readers familiar with those decisions will not be surprised that the Court largely rejects or bypasses Defendants' non-merits arguments on jurisdiction and reviewability but agrees that Plaintiffs' claims fail on the merits.

#### A.    Plaintiffs Have Standing to Sue Most Defendants

Defendants first argue that Plaintiffs lack Article III standing. Mot. at 8-14, 23-25. To establish standing at this stage, "Plaintiffs must state a plausible claim that they have suffered an

injury in fact fairly traceable to [Defendants'] actions . . . that is likely to be redressed by a favorable decision on the merits." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (cleaned up).  Defendants make three arguments: First, that Plaintiffs have suffered no injury in fact because visa-processing delay is a procedural injury that cannot confer standing unless tied to some concrete interest, *see Summers v. Earth Island Inst.*, 555 U.S. 488, 496-97 (2009), which Plaintiffs purportedly lack because they have no constitutional right to enter the United States, Mot. at 8-13; *see Trump v. Hawaii*, 585 U.S. 667, 703 (2018).  Second, that Secretary Blinken, Attorney General Garland, and Secretary Mayorkas cannot redress Plaintiffs' injuries because they play no role in processing their applications.  Mot. at 23-25.  And third, that Plaintiffs' injuries are not redressable because no consular officer can grant them visas until Secretary Blinken determines under § 1735 that they do not threaten the safety or national security of the United States.  *Id.* at 13-14.  The Court agrees that Plaintiffs have not met their burden to establish standing to sue Attorney General Garland or Secretary Mayorkas, but otherwise finds Defendants' standing objections unpersuasive.

      Defendants' first argument misses the mark because it unduly restricts the range of concrete injuries that can confer standing.  While Defendants are correct that Plaintiffs have no constitutional right to enter this country, *e.g.*, *Trump*, 585 U.S. at 703, concrete interests sufficient to support standing are not limited to those "specified by the Constitution itself," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).  Rather, "monetary injury" and "intangible harms . . . with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts" also suffice.  *Id.*  Plaintiffs amply allege such harms.  Both have identified monetary injuries: Khosravaninezhad has been unable to access her tuition waiver and living stipend, Compl. ¶ 40, and Khalili has "suffered financially from . . . having to

support two households" while separated from her husband, *id.* ¶ 78. Each has also plausibly alleged intangible, but still concrete, harms. Khosravaninezhad has "a concrete professional . . . interest in earning an advanced degree." *Khazaei*, 2023 WL 6065095, at *4 (cleaned up); *see* Compl. ¶¶ 39-41. And Khalili "has suffered a concrete harm due to [her] separation from [her] family in the United States." *Pourabdollah v. Blinken*, No. 23-cv-1603, 2024 WL 474523, at *3 (D.D.C. Feb. 7, 2024); *see Trump*, 585 U.S. at 698 (recognizing standing based on separation from family); Compl. ¶ 77. Plaintiffs thus satisfy the injury-in-fact requirement.

Defendants' second argument is somewhat more successful, though it does not resolve most of Plaintiffs' claims. Defendants contend that Plaintiffs lack standing to sue Attorney General Garland, Secretary Blinken, and Secretary Mayorkas because, they assert, none can redress their injuries. Mot. at 23-25.

The Court disagrees as to Secretary Blinken. As numerous courts in this District have explained, "[w]hile the Secretary of State has no legal authority to control which visa applications consular officers grant or deny, nothing precludes him from directing them to decide pending applications within a reasonable time." *Khazaei*, 2023 WL 6065095, at *4; *accord, e.g.*, *Fakhimi*, 2023 WL 6976073, at *4. And the Complaint specifically alleges that Secretary Blinken "has supervisory control over" the relevant consular officers. Compl. ¶ 13. That is enough to show redressability with respect to him.[3]

---

[3] Defendants concede that the consular officers are proper defendants, Mot. at 25, and the Court agrees. An order directing them, as the officials responsible for adjudicating Plaintiffs' applications, to do so more quickly would redress Plaintiffs' injuries. Defendants' Motion does not reference the other two defendants, Assistant Secretary Bitter and the Consul General of the U.S. Consulate in Dubai. *See* Mot. at 23-25. Plaintiffs allege that both are responsible for overseeing "consular activities," Compl. ¶¶ 14, 16, and so the Court concludes that Plaintiffs have standing to sue each for the same reasons as with Secretary Blinken, *see Lee v. Blinken*, No. 23-cv-1783, 2024 WL 639635, at *3 (Feb. 15, 2024) (concluding that Assistant Secretary Bitter was appropriate defendant in visa-delay suit).

But the Court agrees that Plaintiffs have not established standing to sue Attorney General Garland or Secretary Mayorkas.  Plaintiffs must plausibly allege that it is "likely, as opposed to merely speculative," that a favorable decision against each defendant will redress their injuries.  *Lujan*, 504 U.S. at 561 (cleaned up).  Their Complaint falls short of that standard.  Plaintiffs argue that § 1735 requires Secretary Blinken to consult Attorney General Garland before determining whether Plaintiffs threaten the safety or national security of the United States, and that a 2003 agreement between the Departments of Homeland Security and State requires him to consult Secretary Mayorkas as well.  Dkt. 10 (Opp.) at 8-10.  But they allege no facts showing that either Attorney General Garland or Secretary Mayorkas has caused the delays in processing their specific applications or that there is anything either official could do to move the process forward.  That Secretary Blinken may consult both at some point, and that they "*might* be responsible" for the delay, "is simply too speculative a basis" to conclude that an order to either would do anything to redress Plaintiffs' injuries.  *Rashidi*, 2023 WL 6460030, at *3 (dismissing visa-delay claims against Secretary Mayorkas).  The Court must therefore dismiss Plaintiffs' claims against Attorney General Garland and Secretary Mayorkas for lack of jurisdiction.

Finally, the Court rejects Defendants' other argument against redressability.  Defendants assert that "commands to State Department officials to re-adjudicate [Plaintiffs'] . . . visa applications . . . cannot remedy [Plaintiffs'] . . . injuries" because § 1735 "precludes any State Department official from issuing . . . visa[s] to [Plaintiffs] unless . . . specific determination[s] [are] made that [they] 'do[] not pose a threat to the safety or national security of the United States,'" and Plaintiffs "do not plead that these determinations have been made yet."  Mot. at 13 (quoting 8 U.S.C. § 1735(a)).  Courts in this District have routinely rejected this argument, which misunderstands—at this point, one might conclude, willfully—the relief Plaintiffs seek.  *See,*

8

*e.g.*, *Pourabdollah*, 2024 WL 474523, at *4. Plaintiffs allege, and courts have agreed in similar cases, that the "refusals" of their applications pending "further administrative processing" are not final decisions.[4] Compl. ¶¶ 34-38, 44, 73-76, 80; *see, e.g.*, *Pourabdollah*, 2024 WL 474523, at *4. Their injuries result not from the interim refusals of their applications but from the delay in reaching true final decisions, including as to the determinations required by § 1735. An order requiring Defendants "to complete [their] review more expeditiously" would redress that harm. *Khazaei*, 2023 WL 6065095, at *4. As a result, Plaintiffs have standing, except with respect to Attorney General Garland and Secretary Mayorkas.

    **B.**    **Because Plaintiffs' Claims Fail on the Merits, the Court Bypasses Defendants' Other Non-Merits Arguments**

Defendants advance several other threshold arguments for dismissal. The Court concludes that it need not resolve any of them before considering—and rejecting—Plaintiffs' claims on the merits.

First, Defendants assert that the Court cannot hear Plaintiffs' claims because of the doctrine of consular nonreviewability, which generally "prevents a federal court from second-guessing a . . . consular officer's decision to issue or withhold a visa." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1023 (D.C. Cir. 2021); *see* Mot. at 25-29. Because consular nonreviewability is not a jurisdictional issue, *Baan Rao*, 985 F.3d at 1027-29, the Court may, and will, "proceed to the merits" without considering it, *Almaqrami v. Pompeo*, 933 F.3d 774, 784 n.3 (D.C. Cir. 2019); *see Siddiqui v. Blinken*, 646 F. Supp. 3d 69, 77 (D.D.C. 2022) (declining to address consular nonreviewability because visa-delay claim failed on merits).

---

[4] The other four individuals who originally appeared as plaintiffs, whose applications were also initially refused for administrative processing, Compl. ¶¶ 24, 49, 62, have since obtained final decisions on their applications, Dkts. 9, 12, illustrating that a refusal for administrative processing is not the end of the road for a visa applicant.

Second, Defendants advance what they style as a separate argument that the Court cannot review "any statutory claim challenging the conditions of entry, visa issuance[,] and admission . . . of non-citizens." Mot. at 22; *see id.* at 20-23. This argument, which another court in this District aptly described as "somewhat puzzling," *Ahmadi v. Scharpf*, No. 23-cv-953, 2024 WL 551542, at *4 n.6 (D.D.C. Feb. 12, 2024), appears largely to restate the consular nonreviewability defense. Even if Defendants intend the argument to sweep more broadly, they do not claim that it goes to the Court's Article III jurisdiction to hear this case, and the Court does not see how it could. Indeed, Defendants acknowledge that the Supreme Court declined to reach a similar argument in *Trump*, instead electing to decide that case on the merits. Mot. at 22 n.5; *see* 585 U.S. at 682-83. The Court follows the same path here. *Cf. Ahmadi*, 2024 WL 551542, at *4 n.6 (concluding that identical argument was not jurisdictional).

Third, Defendants contend that Plaintiffs have not "identif[ied] a clear, non-discretionary duty for a consular officer to adjudicate . . . any specific visa application," as they must to bring an unreasonable-delay claim under either the APA or the Mandamus Act. Mot. at 14; *see Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (APA); *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) (Mandamus Act). This argument has generally met with a frosty reception from courts in this District, several of which have concluded that both the APA and State Department regulations create a clear duty to adjudicate visa applications within a reasonable time. *See, e.g.*, *Khazaei*, 2023 WL 6065095, at *5-6; *Fakhimi*, 2023 WL 6976073, at *6. But some courts have come out the other way, *see Mukkavilli v. Jaddou*, No. 22-cv-2289, 2023 WL 4029344, at *7-12 (D.D.C. June 15, 2023), *appeal docketed*, No. 23-5138 (D.C. Cir. June 23, 2023), and so, rather than wade into the dispute, the "Court will assume without deciding" that Plaintiffs have identified "a discrete, required duty because, in any event," their

claims fail on the merits,[5] *Ahmadi*, 2024 WL 551542, at *5; *accord, e.g.*, *Barazandeh v. U.S. Dep't of State*, No. 23-cv-1581, 2024 WL 341166, at *6 (D.D.C. Jan. 30, 2024).

  C.  **Plaintiffs' Claims Fail on the Merits**

    1.  **Plaintiffs have not stated plausible unreasonable-delay claims**

The Court begins its merits analysis with Plaintiffs' primary theory: that Defendants have unreasonably delayed their processing of Plaintiffs' visa applications. Under both the APA and the Mandamus Act, "'the central question' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *Barazandeh*, 2024 WL 341166, at *6 (cleaned up) (quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)).

To make that determination, courts in this Circuit consider the six "*TRAC*" factors, drawn from the D.C. Circuit's decision in *Telecommunications Research & Action Center (TRAC) v. FCC*, 750 F.2d 70 (D.C. Cir. 1984): (1) "[T]he time agencies take to make decisions must be governed by a rule of reason"; (2) "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason"; (3) "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake"; (4) "the court should consider the effect of expediting delayed action on agency activities of a

---

[5] Defendants argue that, at least under the Mandamus Act, and possibly under the APA, the requirement that Plaintiffs identify a "clear, non-discretionary duty" is jurisdictional. Mot. at 14-15. Even so, it is at most a matter of statutory jurisdiction, rather than an Article III concern. *See In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005) (rooting requirement of "clear duty to act" in text of Mandamus Act). And the D.C. Circuit has held that courts may "address[] the merits where doing so ma[kes] it possible to avoid a doubtful issue of statutory jurisdiction." *Kramer v. Gates*, 481 F.3d 788, 791 (D.C. Cir. 2007) (cleaned up). The Court does so here. *See da Fonseca v. Emmel*, No. 23-cv-3300, 2024 WL 519603, at *3 (D.D.C. Feb. 9, 2024) (taking this approach); *cf. Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (accepting as undisputed that agency had duty to act).

higher or competing priority"; (5) "the court should also take into account the nature and extent of the interests prejudiced by delay"; and (6) "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *Id.* at 80 (cleaned up). "These considerations are often grouped into four basic inquiries":

> First, is there any rhyme or reason—congressionally prescribed or otherwise—for an agency's delay (factors one and two)?  Second, what are the consequences of delay if the Court does not compel the agency to act (factors three and five)?  Third, how might forcing the agency to act thwart its ability to address other priorities (factor four)?  Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?

*Khazaei*, 2023 WL 6065095, at *6 (cleaned up); *accord, e.g.*, *Ahmadi*, 2024 WL 551542, at *5-7.

After conducting these four inquiries (in a slightly different order), the Court concludes that the balance of the *TRAC* factors favors Defendants, making dismissal appropriate. *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340-46 (D.C. Cir. 2023) (dismissing visa-delay case based on *TRAC* factors).

      **a.**    ***TRAC* factors one and two**

The first two factors, which consider whether "there [is] any rhyme or reason—congressionally prescribed or otherwise—for [the] agency's delay," *Khazaei*, 2023 WL 6065095, at *6, point toward dismissal.  Visa processing inevitably "takes a baseline amount of time," and "courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Id.*  Plaintiffs had waited only about seven and eleven months, respectively, at the time they filed their Complaint, and have waited only about seventeen and twenty-one months, respectively, now. Compl. ¶¶ 34, 73.  Even setting aside the rule that "[t]he proper method for calculating delay . . . is the length of time between the last action the government took on a visa application and the

12

filing of [the] plaintiff's complaint," *Barazandeh*, 2024 WL 341166, at *7 n.7, Plaintiffs' current wait times fall well within the bounds of what courts have ordinarily found reasonable, *see, e.g.*, *Ahmadi*, 2024 WL 551542, at *5 (finding twenty-one-month delay in processing F-visa application reasonable).

Looking to the second *TRAC* factor, Plaintiffs respond that Congress has "provided a[n] . . . indication of the speed with which it expects the agency to proceed," *TRAC*, 750 F.2d at 80, in 8 U.S.C. § 1571. Opp. at 28. That provision states:

> It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application, except that a petition for a nonimmigrant visa under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition.

8 U.S.C. § 1571(b).

The trouble for Plaintiffs is that this provision—which, they acknowledge, is nonbinding, Opp. at 28-29—says nothing about processing of F-visa applications by consular officials. First, the language appears in a section directed not to consular officials but to the Immigration and Nationality Service (INS), a since-dissolved agency distinct from the State Department whose functions have largely transferred to entities within the Department of Homeland Security. *See* 8 U.S.C. § 1571(a) (stating congressional purposes related to INS); *El Centro Reg'l Med. Ctr. v. Blinken*, No. 3:21-cv-361, 2021 WL 3141205, at *4 & n.2 (S.D. Cal. July 26, 2021). Second, while the "except" clause does refer to nonimmigrant visas, the statute it cross-references addresses certain employment-based visas, not the F (student) visas that Plaintiffs seek. *See* 8 U.S.C. § 1184(c).

In any event, even assuming that, "though the [180-day] language is insufficient to set a deadline, [the Court] can look to Congress's aspirational statement as a ruler against which the

13

agency's progress must be measured[,] . . . the delay has not reached the level of disproportionality . . . sufficient [for the Court] to grant relief." *Da Costa*, 80 F.4th at 344 (cleaned up) (discussing § 1571 in context of claim against subagency of Department of Homeland Security). *Da Costa*, for example, concluded that, even considering the 180-day period given in § 1571, a delay of four-and-a-half years in processing an immigration petition was reasonable. *Id.* at 342, 344, 346.

Citing agency records and statements, Plaintiffs also argue that Defendants can and often do finish processing visa applications more quickly than the length of Plaintiffs' wait. Opp. at 26-30; Dkt. 15. These sources do not, however, show that officials can process *all* applications so quickly. For example, Plaintiffs cite a post on the State Department's website describing purported improvements in visa-processing efforts.[6] Dkt. 15-1. Yet the post itself cautions that "demand remains at historically high levels in some countries" and observes that some applicants "still face lengthy wait times" even to sit for interviews. *Id.* at 4. Similarly, while Plaintiffs assert that roughly "85% of administrative processing is completed within 60 days," Opp. at 27, that figure leaves a significant share of applicants facing longer delays.

The upshot is that Plaintiffs have not plausibly alleged that Defendants are not following a rule of reason in processing visa applications, and the first two *TRAC* factors support dismissal.

    **b.**  ***TRAC* factor four**

The fourth factor, "the effect of expediting delayed action on agency activities of a higher or competing priority," *TRAC*, 750 F.2d at 80, "carries significant weight," *Barazandeh*, 2024

---

[6] After filing their Opposition, Plaintiffs moved for the Court to take judicial notice of this post. Dkt. 15. Defendants have not opposed the Motion, and the Court agrees that it can take judicial notice of "information posted on official public websites of government agencies," *Markowicz v. Johnson*, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016), so it grants Plaintiffs' Motion.

WL 341166, at *9, and also cuts strongly in Defendants' favor.  The D.C. Circuit has "refused to grant relief, even though all the other factors considered in *TRAC* favored it, where a judicial order putting [a party] at the head of the queue would simply move all others back one space and produce no net gain."  *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (cleaned up).  As the D.C. Circuit and courts in this District have repeatedly explained in recent visa-delay cases, such "judicial reordering of [Defendants'] priorities" is exactly what Plaintiffs seek.  *Khazaei*, 2023 WL 6065095, at *7 (cleaned up); *see, e.g.*, *Da Costa*, 80 F.4th at 343; *Ahmadi*, 2024 WL 551542, at *6.  "Consular processing capacity is . . . a zero-sum game, so granting [Plaintiffs] relief would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own."  *Ahmadi*, 2024 WL 551542, at *6 (cleaned up).  "Any such reordering of the queue of applicants seeking adjudication would be inappropriate here because there would be no demonstrable net gain in visa processing at large."  *Id.* (cleaned up).

Plaintiffs' arguments to the contrary do not persuade.  They assert first that the fact that other individuals who submitted their visa applications after Khosravaninezhad have since had their applications adjudicated "demonstrates [that] there is no orderly queue of applicants."  Opp. at 35.  But the fact that Defendants do not make final decisions in the exact order in which they receive applications does not plausibly show that they are not working in an orderly fashion.  "[D]ifferent applications may [simply] require different time and attention."  *Fakhimi*, 2023 WL 6976073, at *9.  Plaintiffs' further arguments (1) that, if there is a line, they have waited long enough to be at the front of it and (2) that the delay thus far shows that Defendants have "lost [Plaintiffs' applications] in a bureaucratic shuffle," Opp. at 34 (cleaned up), beg the question, assuming that the wait time to date is unreasonable and could not result from competing

15

priorities and legitimate agency needs. Contrary to that assumption, the Court has already explained that the length of the delay, standing alone, favors Defendants.

Finally, Plaintiffs contend that Defendants have claimed in public statements to be prioritizing F-visa applications, such that "even if [Plaintiffs'] applications were processed ahead of others, it would be justified by . . . Defendants['] own priority buckets."[7]  Opp. at 34 (cleaned up).  If Defendants intended to prioritize Plaintiffs' specific applications, they would presumably do so, and, otherwise, moving Plaintiffs to the front of the queue of F-visa applicants would still result in judicial line-reordering.  The fourth *TRAC* factor strongly favors Defendants.  *See, e.g.*, *Da Costa*, 80 F.4th at 343; *Khazaei*, 2023 WL 6065095, at *7.

### c.     *TRAC* factors three and five

*TRAC* factors three and five, which examine "the consequences of delay," *Khazaei*, 2023 WL 6065095, at *6, including the effect on "human health and welfare," *TRAC*, 750 F.2d at 80, at least arguably tilt in Plaintiffs' favor.  Plaintiffs have alleged concrete injuries to their educational, familial, financial, and professional interests caused by Defendants' delay.  *See supra* Section III.A; *see, e.g.*, *Ahmadi*, 2024 WL 551542, at *6 (concluding based on similar allegations that third and fifth factors favored plaintiff).  Still, these injuries—which are likely shared by "many others facing similar circumstances," *Siddiqui*, 646 F. Supp. 3d at 77 (cleaned up)—are not so extreme or unusual as to plausibly outweigh the other factors favoring Defendants.  *See Da Costa*, 80 F.4th at 344-45.

---

[7] Plaintiffs also cite these statements in support of their argument that Defendants do not process applications on a "first-in, first-out basis."  Opp. at 33.  But, even accepting this reading (which Defendants dispute, Dkt. 13 at 21-22), Plaintiffs can hardly complain; Defendants' prioritizing F-visa applications would only help Plaintiffs.  And the statements in no way suggest that, within the class of F-visa applicants, Defendants are not processing applications in an orderly way.

### d. *TRAC* factor six

Plaintiffs acknowledge that they "have not alleged impropriety lurking behind agency lassitude" and that the sixth *TRAC* factor is therefore "neutral at best." Opp. at 35. The Court agrees that this factor favors neither side. *See Da Costa*, 80 F.4th at 345-46.

\* \* \*

Taken together, the *TRAC* factors cut Defendants' way, and so the Court must dismiss Plaintiffs' unreasonable-delay claims.

### 2. Any arbitrary-and-capricious claim also fails

Plaintiffs' Complaint gestures in passing toward a claim that "Defendants have engaged in a pattern and practice of unreasonable delay for Iranian visa applicants such as . . . Plaintiffs," which conduct, Plaintiffs assert, is arbitrary and capricious in violation of the APA. Compl. ¶¶ 83, 105-07; *see also* 5 U.S.C. § 706(2)(A) (authorizing courts to set aside agency action that is "arbitrary, capricious, . . . or otherwise not in accordance with law"). Plaintiffs appear to have abandoned this claim (if they ever intended to bring it) in their Opposition to Defendants' Motion, which focuses exclusively on their unreasonable-delay claims. *See* Dkt. 10.

For completeness's sake, the Court notes that, even if Plaintiffs had not forfeited this theory, and even if such disparate treatment could be the basis of an APA claim, Plaintiffs do not plausibly allege the existence of a discriminatory pattern or practice. *See Khazaei*, 2023 WL 6065095, at \*7 (rejecting similar arbitrary-and-capricious claim because of lack of nonconclusory supporting allegations). Setting aside Plaintiffs' conclusory say-so, nothing in the Complaint supports a reasonable inference that Defendants have singled out Iranian citizens for

particularly unfavorable treatment. *See Iqbal*, 556 U.S. at 681 ("[C]onclusory [allegations are] . . . not entitled to be assumed true."). The Court therefore dismisses this claim as well.[8]

### IV.   CONCLUSION AND ORDER

As Defendants acknowledge, Mot. at 38, Plaintiffs' desire for final decisions on their visa applications is understandable. But their Complaint does not plausibly show that the delays in processing their applications are unreasonable, and so the Court must dismiss this case.

For these reasons, it is hereby

**ORDERED** that Plaintiffs' Request for Judicial Notice, Dkt. 15, is **GRANTED**. It is further

**ORDERED** that Defendants' Motion to Dismiss, Dkt. 5, is **GRANTED**. And it is further

**ORDERED** that Plaintiffs' Complaint, Dkt. 1, and this case are **DISMISSED WITHOUT PREJUDICE**.

The Clerk of Court is **DIRECTED** to close this case.

**SO ORDERED.**

This is a final appealable Order. *See* Fed. R. App. P. 4(a).

Date:   March 8, 2024

                                                      ANA C. REYES
                                                      United States District Judge

---

[8] Plaintiffs' Opposition also includes a two-sentence request that the Court compel production of the administrative record. Opp. at 12 & n.6. Plaintiffs make this request in support of their argument that the refusals of their applications for further administrative processing were not final decisions. *See id.* The Court has already agreed with Plaintiffs on this point, so their request is moot. In any event, since this case challenges agency inaction, rather than a final decision, "there is no administrative record for a federal court to review." *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 n.6 (D.D.C. 2021) (cleaned up).